UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JASON DAVISON, ANNA LEYDEN,
ROCHELLE DAVISON, and
GLORIA LEYDEN,

NO. CIV. S-07-1894 LKK/CMK

      Plaintiffs,

    v.

HART BROADWAY, LLC dba
GRAND BALLROOM ON
BROADWAY; and DOES 1
through 10,

O R D E R

      Defendants.

_____/

    This case concerns, inter alia, claims arising under the Americans with Disabilities Act and California's Unruh Civil Rights Act. The four plaintiffs are a couple who were planning their wedding and two of their disabled intended guests. The former two plaintiffs secured the Hart Ballroom, a facility operated by defendant, for the wedding reception. This Ballroom is serviced by a 1930s-era elevator, which must be operated by a trained technician. Plaintiffs claim that defendant violated the Americans

1

with Disabilities Act by failing to provide sufficient access to the elevator free of charge, and by retaliating against plaintiffs' demand for such access by breaching the rental contract and closing the facility. Pending before the court is plaintiffs' motion for summary judgment on plaintiffs' claims brought under California's Unruh Civil Rights Act, which are predicated on the alleged violations of the ADA. For the reasons stated below, this motion is granted in part and denied in part.

**I. BACKGROUND**

**A.  Exclusion of Evidence**

At the outset, plaintiffs object to the primary piece of evidence provided by defendant in opposition to this motion, the declaration of defendant's employee Rebecca Parker. Defendant's initial disclosures did not identify Parker as a potential witness. Plaintiffs therefore request that Parker's testimony be excluded pursuant to Fed. R. Civ. P. 37.

In October of 2008, plaintiffs filed an earlier motion for summary judgment raising the same issues as the present motion. Defendant filed an opposition to this motion on November 3, 2008, which was supported by a substantially similar declaration by Ms. Parker.  Plaintiffs subsequently withdrew this motion. Notwithstanding defendant's failure to disclose Parker, plaintiffs therefore had actual knowledge of defendant's intent to use Parker as a witness in this case and of the content of her testimony well before discovery closed on February 22, 2009.  Plaintiffs nonetheless chose not to depose Parker.  On substantially similar

facts--actual prior receipt of a declaration of an undisclosed witness at a time that left several months for related discovery-- the Ninth Circuit has held that an alternative sanction for non-disclosure is appropriate. <u>Fonseca v. Sysco Food Servs. of Ariz., Inc.</u>, 374 F.3d 840, 846 (9th Cir. 2004); <u>see also</u> Fed. R. Civ. P. 37(c)(1) (providing for alternative sanctions), <u>Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.</u>, 412 F.3d 745, 752 (7th Cir. 2005) (describing circumstances in which alternative sanctions may be appropriate).

In addition, Parker was identified at several points in defendant's response to plaintiffs' interrogatories, served on plaintiffs on February 9, 2009, prior to the close of discovery. Pls.' Notice of Errata, 3.

Accordingly, the court concludes that exclusion of the Parker declaration is not the appropriate sanction for defendant's failure to disclose an intent to use Parker as a witness. Instead, discovery will be reopened for the limited purpose of allowing plaintiffs to depose Parker.[1] Defendant shall pay the cost of this deposition, including reasonable costs and attorney's fees incurred by plaintiffs. Plaintiffs shall file an affidavit with the court describing such expenses.

**B.    Identity of the Parties**

Plaintiffs' claims surround an attempt to rent the Grand

_____

[1] In addition, pursuant to this court's former order of March 11, 2009, plaintiffs are permitted to depose Eric Hart and Allison Hart between September 28, 2009 and September 30, 2009.

Ballroom in Chico, California, to host the reception for the wedding of plaintiffs Jason Davison and Anna Davison. Neither Jason Davison nor Anna Davison, nee Anna Leyden, are disabled. The other two plaintiffs are Rochelle Davison and Gloria Leyden. Rochelle Davison, Jason Davison's sister, is disabled and requires the use of crutches, a wheelchair, or a scooter for mobility. Plaintiffs' Undisputed Fact ("UF") 3, 7.[2] Gloria Leyden, Anna Davison's mother, suffers a degenerative disk disease in her back, as well as arthritis. UF 8, 9. The parties agree that Rochelle Davison and Gloria Leyden are disabled within the meaning of all applicable laws. See UF 9. Both Rochelle Davison and Gloria Leyden were invited to, and planned to attend, the wedding and reception. UF 27.

Defendant owns and operates the Grand Ballroom facility ("Ballroom"). UF 10. The Ballroom is on the building's third floor. UF 22. The building housing the Ballroom was built in 1884, and is on the City of Chico's register of historic places. The building has not been renovated since the 1930s, when the currently existing elevator was installed. The parties agree that the Ballroom is "a public accommodation, open to the public, which is intended for nonresidential use and whose operation affects commerce." UF 12.[3]

---

[2] The "undisputed facts" taken from plaintiffs' statement and cited by the court are, in pertinent parts, undisputed.

[3] Although defendant affirmatively stated that this fact is not in dispute, defendant's opposition memorandum also argues that the Ballroom was "not generally open to the public" because

4

In the events relevant to this dispute, defendant was represented by defendant's employee Rebecca Parker. Plaintiffs' communications were with Parker, and the only evidence provided by defendant in opposing the present motion consists of Parker's declaration and attached exhibit.

**C.    The Parties' Negotiation and Rental Agreement**

On November 29, 2006, Jason Davison and Anna Leyden toured the facility.  UF 21.  At that time, they spoke with Parker, who informed them that the elevator was available, but that it needed to be operated by a technician provided by defendant.  UF 23, 24. Defendant ordinarily provided a technician for three one hour blocks of time, rather than for the entire period of the rental. UF 24, 25.

Jason and Ana signed a contract with defendant on February 9, 2007, providing for rental of the facility from 10:00 a.m. to 10:00 p.m. on May 26, 2007.  UF 26.  Pursuant to this contract, these plaintiffs agreed to pay a $750 rental fee and $200 security deposit.  Id.  Defendant asserts that this money was not actually paid until sometime around April 2, 2007, but no evidence indicates when payment was made.

Subsequent to signing the contract, plaintiffs learned that

---

"patrons had to enter into a contract before they could enjoy the accommodations offered by the facilities." Opp'n at 7.  The need to enter such a contract does not itself indicate that the facility is not a public accommodation.  See 42 U.S.C. § 12181(7) (defining public accommodations to include numerous facilities normally only open to those who have contracted with the operator, such as hotels, theaters, zoos, and golf courses).

they would need the elevator for the entire twelve hour period. UF 27. On March 18, 2007, Jason sent Parker an email asking "if we could have the Ballroom from 8 in the morning until 10 at night? Can we use only use the elevator for a half an hour then and still have 2 and a half hours later?" Decl. of Jason Davison, Ex. A. On March 28, 2007, plaintiffs had not received a response to this question, and Jason sent another email asking "how much is it to have the elevator for the whole event? We have a few guest[s] who are in wheelchairs and[/]or have a difficult time walking. Is it possible to access the elevator when ever these people need it?" Id. The same day, Parker sent a response stating that she would see whether anyone would be available to operate the elevator for the entire day, and what the charge would be. Id.

On April 3, 2007, Jason sent Parker an email stating that "As far as the price goes on the elevator, I feel there should be no added fee as our guests are disabled and need the access at any time free of charge." Id. That afternoon, Parker responded by stating that:

> The ballroom elevator is available to our clients the day of the event for three one hour time frames. I have suggested that you use one of the time frames for arrival of guests. Once guests have arrived we suggest to them that when they are ready to leave if they give me a call . . . before they start to say their goodbyes by the time I arrive to run the elevator for them they don't have to even wait.

Id. In opposing this motion, Parker declares that "[p]romptly in response to the [April 3, 2007] email, arrangements were made for

6

full time access to the elevators without any additional costs."
Parker Decl., ¶ 4. Aside from this declaration, defendant provides
no evidence of such arrangements or an offer therefor.

The next day, Jason and Ana sent Parker a letter via certified
mail "request[ing] that you either have the elevator readily
accessible during the entire 12-hour period so that our disabled
guests can come and go at their leisure . . . or we will seek any
and all remedies available to us." Decl. of Jason Davison, Ex. B;
Pls.' UF 29.

**D.  Closure of The Ballroom**

On April 6, 2007, Parker sent a letter via certified mail
explaining that "due to circumstances beyond our control," the
rental contract was cancelled and the Ballroom would be
unavailable. Decl. of Jason Davison, Ex. C. This letter did not
provide any reason for the cancellation. Id.

Defendant argues that the Ballroom was closed because an
inspection by the Chico Fire Department revealed various fire
safety issues. Parker Decl. ¶ 5. The inspection report is dated
January 12, 2007.[4] Parker Decl. Ex. A. The inspection report
reveals that the fire department identified problems with the
emergency lighting.[5] Id. Despite this deficiency, the inspection

[4] The court observes that the inspection report states that
the next inspection would occur in 60 days, i.e., around March 12,
2007. Neither party has provided any discussion of whether a
subsequent inspection in fact occurred, or any consequences flowing
therefrom.

[5] Defendant also generally states that the report also
identified deficiencies in signage. The copy of the report

did not cause any revocation of the Ballroom's then-existing operating permits. UF 17. Instead, the Ballroom had a valid permit through August 31, 2007. UF 18. However, defendant states that it concluded that it would be too expensive to make the required renovations, and that once these unsafe conditions were revealed by the inspection, defendant was unwilling to operate and thereby expose itself to liability for accidents resulting from the unsafe lighting. Accordingly, defendant purportedly chose to close the Ballroom and not seek renewal of the permit. The only evidence offered to demonstrate this conclusion and choice is Parker's declaration that the Ballroom closed "due to circumstances beyond our control." Parker Decl. ¶ 5. Defendant states that all events after April 6, 2007 were cancelled, although defendant concedes that no events other than plaintiffs' reception had actually been scheduled. Opp'n 11.

In the letter cancelling the contract, defendant refunded plaintiffs' payment, offered to pay $250.00 for reprinting of plaintiffs' wedding invitations, and provided a list of alternative venues available on that day. Decl. of Jason Davison, Ex. C (April 6, 2007 letter from Rebecca Parker). Based on the above, defendant argues that it acted reasonably and in good faith.

**E.    Consequences of The Cancellation**

Plaintiffs declare that as a result of the cancellation, they suffered ongoing emotional and physical distress.    UF 32.

provided to the court is nearly illegible, such that the court cannot determine whether the report supports this claim.

Plaintiffs also declare that they are currently deterred from using the facility, although plaintiffs do not dispute that the facility has remained closed.

Plaintiffs filed this suit on September 12, 2007. The complaint brings claims for fraud, negligence, breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, and for violations of the ADA, the California Disabled Persons Act, the Unruh Civil Rights Act, and the Unfair Business Practices Act. The present motion only seeks adjudication of plaintiffs' Unruh Act claims, which are premised on the existence of ADA violations, and seeks only the statutory minimum damages.

**II. STANDARD FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a

9

1    genuine issue of material fact.

2 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the

3 nonmoving party will bear the burden of proof at trial on a

4 dispositive issue, a summary judgment motion may properly be made

5 in reliance solely on the 'pleadings, depositions, answers to

6 interrogatories, and admissions on file.'" Id. Indeed, summary

7 judgment should be entered, after adequate time for discovery and

8 upon motion, against a party who fails to make a showing sufficient

9 to establish the existence of an element essential to that party's

10 case, and on which that party will bear the burden of proof at

11 trial. Id. at 322. "[A] complete failure of proof concerning an

12 essential element of the nonmoving party's case necessarily renders

13 all other facts immaterial." Id. In such a circumstance, summary

14 judgment should be granted, "so long as whatever is before the

15 district court demonstrates that the standard for entry of summary

16 judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

17     If the moving party meets its initial responsibility, the

18 burden then shifts to the opposing party to establish that a

19 genuine issue as to any material fact actually does exist.

20 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

21 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391

22 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d

23 1276, 1280 (9th Cir. 1979), cert. denied, 455 U.S. 951 (1980).

24     In attempting to establish the existence of this factual

25 dispute, the opposing party may not rely upon the denials of its

26 pleadings, but is required to tender evidence of specific facts in

10

the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 242 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### III. ANALYSIS

The present motion seeks judgment only as to plaintiffs' claims arising under California's Unruh Civil Rights Act, Cal. Civ. Code § 51 et seq. Plaintiffs seek to establish a violation of the Unruh Act by showing that defendant violated the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq. See Cal. Civ. Code

§ 51(f) ("A violation of the right of any individual under the [ADA] shall also constitute a violation of this section."); Lentini v. Cal. Ctr. for the Arts, 370 F.3d 837, 847 (9th Cir. 2004).

Plaintiffs argue that defendant violated two provisions of the ADA. First, plaintiffs argue that defendant violated Title III of the ADA by denying disabled persons full and equal access to a place of public accommodation. This claim is brought only by plaintiffs Rochelle Davison and Gloria Leyden. Second, plaintiffs argue that defendant violated Title V of the ADA by retaliating against plaintiffs because of their request for access. This claim is brought by all four plaintiffs. Plaintiffs argue that the $4,000 statutory minimum damages provided by the Unruh Act are available for each of these six claims, entitling plaintiffs to $24,000 in damages. Cal. Civ. Code § 52(a). The court addresses each of these theories, and defendant's arguments against them, in turn.

**A.    Violation of Title III of the ADA**

Title III of the APA prohibits "discriminat[ion] . . . on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation" ADA § 302(a); 42 U.S.C. § 12182(a). To prevail on a claim for discrimination in violation of this title, a plaintiff must show that "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public

13

accommodations by the defendant because of her disability." <u>Molski v. M.J. Cable, Inc.</u>, 481 F.3d 724, 730 (9th Cir. 2007). Here, the parties agree that plaintiffs Rochelle and Gloria are disabled. Additionally, the Ballroom is a place of public accommodation, in that it is "an auditorium, convention center, lecture hall, or other place of public gathering" whose operations affect commerce. 42 U.S.C. § 12181(7)(D); <u>see also</u> UF 12. The parties' dispute is whether plaintiffs have standing to bring the discrimination claim, and whether defendant's conduct amounted to discrimination under the ADA.

### 1. Standing to Bring the Discrimination Claim

Defendant challenges the disabled plaintiffs' standing to bring discrimination based on denial of access. Standing has both constitutional and prudential components. Pursuant to Article III, a plaintiff does not present a case or controversy giving rise to federal jurisdiction unless he can show injury, causation of that injury by defendants' conduct, and redressability of that injury. <u>See, e.g.</u>, <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 181 (2000). Even when the constitutional minima of standing are recognized, prudential concerns may further limit standing. <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 542 U.S. 1, 11-12 (2004). For example, prudence may compel the courts to recognize only certain forms of injury. <u>Bennet v. Spear</u>, 520 U.S. 154, 164 (1997) (for statutory claim, injury must be within the zone of interests protected by the statute), <u>Secretary of State of Md. v. Joseph H. Munson Co.</u>, 467

14

U.S. 947, 955 (1984) (even where a plaintiff has himself suffered an injury, he ordinarily "cannot rest his claim to relief on the legal rights or interests of third parties").

As to injury, defendant argues that Rochelle and Gloria were not cognizably injured because they were not in contractual privity with defendant. On these facts, privity is not relevant to the Article III injury inquiry. These plaintiffs had concrete plans to visit the facility as part of the wedding reception, yet the failure to provide access would have deterred them from doing so. This type of injury satisfies the Article III requirement of injury that is "concrete and particularized" and "actual or imminent." Pickern v. Holiday Quality Foods, 293 F.3d 1133, 1137 (9th Cir. 2002) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). For purposes of prudential standing, "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." Id. at 1136-37. This deterrence existed despite the fact that the contract was between defendant and other plaintiffs.

A related issue, which might be analyzed under either the injury or the causation component of the standing inquiry, is whether plaintiffs could have been deterred from attending an event that did not actually happen. Pickern held that "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA

15

has suffered 'actual harm.' Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA suffers 'imminent harm.'" Id. at 1138. Here, plaintiffs Rochelle Davison and Gloria Leyden were "threatened with harm in the future because of . . . imminently threatened noncompliance." Id. Pickern does not require that this threat be realized. Accordingly, plaintiffs have demonstrated injury.

Defendant also argues that plaintiffs' injury is no longer redressable, because the Ballroom remains closed, such that there is no possibility of future injury. This factor might inhibit plaintiffs' ability to seek injunctive relief. See Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); Bird v. Lewis & Clark College, 303 F.3d 1015, 1020 (9th Cir. 2002). The present motion, however, only seeks a determination that monetary damages are appropriate. The monetary damages would provide a means to redress plaintiffs' past injuries. Because such damages are potentially available, plaintiffs have satisfied the redressability prong of Article III standing.

## 2. Discrimination

Plaintiffs argue that defendant's conduct was discriminatory under two definitions of the term. First, ADA section 302(a) provides a "general rule," under which courts have held that conduct is discriminatory if it denies disabled individuals full and equal enjoyment of a facility. 42 U.S.C. § 12182(a). Second, ADA section 302(b)(2)(A) provides that various specific practices

constitute prohibited discrimination. Plaintiffs argue that pursuant to this section, defendant discriminated by refusing a request to make a reasonable modification to defendant's practice that was necessary to provide access to the facility. 42 U.S.C. § 12182(b)(2)(A)(ii). Because the court concludes that plaintiffs are entitled to summary judgment as to liability under the first theory, the court does not address the second.

Section 302(a) of the ADA establishes the "general rule" that

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Plaintiffs argue that defendant denied Rochelle and Gloria full and equal enjoyment of the facility by either seeking to charge for elevator access in excess of three hours, or by refusing to provide more than three hours of access entirely. It is important for analysis to keep in mind what is in issue. The facility in question is the ballroom, the elevator is merely a means of accessing the facility. While it is true that both the nondisabled and the disabled have equal access to the elevator, only those who are free from disability have access to the facility by use of the stairs.

Defendant flatly disputes the factual predicate of plaintiffs' complaint. They argue that once defendant became aware of the need for accommodation on April 3, 2007, defendant offered to provide

access to the elevator for the entire time free of charge.  Parker Decl. ¶ 5.  Defendant implies that this offer was made in Parker's email of April 3, 2007, see Opp'n 9, and has not presented any other evidence of another communication presenting this offer. However, review of this email, the authenticity and accuracy of which is not disputed, contradicts the defendant's interpretation. The email plainly states that "The ballroom elevator is available to our clients the day of the event for three one hour time frames," and provides recommendations as to how to allocate these three hours.  Decl. of Jason Davison, Ex. A.  The email contains no discussion of expanded access.  The court is mindful of its obligation to interpret the available evidence in the light most favorable to the non-moving party.  However, as defendant has tendered no evidence that shows a genuine dispute as to this issue, the court concludes that defendant did not offer to provide access to the elevator for the entire rental period without cost.

In the alternative, defendant raises three defenses: that the offered access was a "reasonable accommodation," that defendant's acts were a reasonable response to a direct threat to safety, and that the historical character of the building warranted defendant's actions.  Of these, the latter two are affirmative defenses which were waived when defendant failed to plead them in its answer.  A claim that "the historic significance of a structure would be threatened or destroyed by the proposed barrier removal plan" such that removal is not required is an affirmative defense.  Molski v. Foley Estates Vineyard, 531 F.3d 1043, 1048 (9th Cir. 2008).

Although no court has stated that the "direct threat" defense provided by 42 U.S.C. § 12182(b)(3) is an affirmative defense, the analogous "direct threat" provision of Title I of the ADA, concerning employment discrimination, has been held to be an affirmative defense. Chevron U.S.A. v. Echazabal, 536 U.S. 73, 78 (2002) (interpreting 42 U.S.C. § 12113(b)); see also Bragdon v. Abbott, 524 U.S. 624, 649 (1998) (§§ 12113(b) and 12132(b)(3), of Titles I and III, are "parallel provisions"). The Ninth Circuit has also held that the burden of proof of the direct threat defense under Title III falls squarely on defendant. Lockett v. Catalina Channel Express, Inc., 496 F.3d 1061, 1066 (9th Cir. 2007) (citing Bragdon, 524 U.S. at 649-50). Accordingly, both of these defenses are affirmative defenses not properly before the court.

The remaining "defense" presents a more difficult issue. Defendant suggests that the offered access was sufficient under the ADA, as a "reasonable accommodation in the form of a separate arrangement." The terms "reasonable accommodation" and "separate arrangement" are both terms of art within the context of the ADA. A "reasonable accommodation" is a term taken from the Rehabilitation Act, which has been held to be analogous to the term "reasonable modification" appearing in the ADA. 29 U.S.C. § 794. Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1083 (9th Cir. 2004) (quoting Wong v. Regents of the Univ. of Cal., 192 F.3d 807, 816 n.26 (9th Cir. 1999)). In this context, "reasonable modification" ordinarily refers to a modification of defendant's facilities or practices requested by plaintiff. 42 U.S.C. §

12182(b)(2)(A)(ii). Here, as noted above, on the evidence before the court, it appears that defendant refused to deviate from its customary practice--no modification was offered. A "separate arrangement" refers to an attempt to remedy problems with access to a service or facility by provision of an alternative service or facility that is "equivalent to" the primary one. 42 U.S.C. § 12182(b)(1)(A)(iii); see also Lockett, 496 F.3d at 1065. Here, defendant did not offer to remedy any barrier to access to the Ballroom by providing a separate, equivalent but accessible facility.

Instead, defendant's argument is apparently that the offered three hours of elevator access provided access to the Ballroom that was "full and equal" to that enjoyed by non-disabled persons. 42 U.S.C. § 12182(a). This argument therefore challenges plaintiffs' ability to prove an element of their prima facie case, i.e., that "plaintiff[s] [were] denied public accommodations by the defendant because of [their] disability." M.J. Cable, 481 F.3d at 730. As such, this argument is not an affirmative defense, and was not waived by defendant's failure to raise it in its answer to the complaint.[6]

---

[6] Other defenses that have been found to be affirmative defenses under the ADA also differ from the above interpretation of defendant's argument. In general these are defenses that do not challenge a plaintiff's ability to make a prima facie case, but argue that the defendant is nonetheless not liable. See Lentini v. Cal. Ctr. for the Arts, 370 F.3d 837, 845 (9th Cir. 2004) (argument that accommodation not required because it would "fundamentally alters a service or facility is an affirmative defense."), Colo. Cross Disability Coalition v. Hermanson Family Ltd. Pshp., 264 F.3d 999, 1006 (10th Cir. 2001) (argument that

On the merits of this argument, the evidence offered by defendant, interpreted in the light most favorable to the defendant, is insufficient to enable a jury to conclude that plaintiffs had access that was "full and equal" to that of the other reception guests. Other guests could come and go at any time, and without providing advanced notice. Disabled guests were offered the ability to enter and exit the facility only during specified times amounting to a small fraction of the rental period, or (assuming that these specified times did not amount to the entire three hour period) by providing significant advanced notice so that the operator could arrive. Accordingly, plaintiffs are entitled to summary judgment as to the existence of a violation of Title III of the ADA.[7]

## C.   Retaliation under ADA Title V

Plaintiffs bring separate claims alleging that defendant's breach of the contract constituted retaliation against plaintiffs in violation of Title V of the ADA. Title V provides that "No

_____

barrier to access need not be removed because removal is infeasible is an affirmative defense); <u>see also</u> <u>Johnson v. Gambrinus Company/Spoetzl Brewery</u>, 116 F.3d 1052, 1059 (5th Cir. 1997), <u>Gorman v. Bartch</u>, 152 F.3d 907, 912 (8th Cir. 1998). For the defenses raised in the cited cases, the statute explicitly places the burden of proof on the defendant. 42 U.S.C. §§ 12182(b)(2)(A)(ii), (b)(2)(A)(iv).

[7]Because the court has concluded that no reasonable jury could find that the offered access was equivalent to the access provided nondisabled guests, there is no jury question under <u>Lockett v. Catalina Channel Express, Inc.</u>, 496 F.3d 1061, 1066 (9th Cir. 2007).

person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ." 42 U.S.C. § 12203(a). Such claims may be brought by individuals who are not themselves disabled. <u>See</u> <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 502 (3d Cir. 1997). Plaintiffs bring such a claim on behalf of each of the four individual plaintiffs.

Courts evaluating motions for summary judgment on ADA retaliation claims have applied the burden-shifting framework first established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Brown v. City of Tucson</u>, 336 F.3d 1181, 1187 (9th Cir. 2003).[8] Under this framework, if the plaintiff establishes that (1) she engaged in protected activity, (2) she suffered an adverse action, and (3) a causal link between the two, the burden shifts to the defendant to provide a non-retaliatory explanation for the adverse action. <u>Brown</u>, 336 F.3d at 1187.

Here, plaintiffs Jason Davison and Anna Davison engaged in protected activity by objecting to defendant's restriction on elevator usage. <u>See</u> <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000) (In a Title VII case, stating that complaints about

---

[8] <u>McDonnel Douglas</u> considered an employment discrimination claim brought under Title VII, but this framework has been applied to retaliation claims and to discrimination claims arising under other statutes. <u>Brown</u>, 336 F.3d at 1187. This framework is also most often applied in determining whether a plaintiff has demonstrated a question of material fact sufficient to survive a defendant's motion for summary judgment.

treatment of others are protected activity).  As to plaintiffs

Rochelle Davison and Gloria Leyden, plaintiffs have not provided

any evidence that these plaintiffs engaged in protected activity.

For example, plaintiffs have not identified any communication

between these individuals and defendant.  Accordingly, plaintiffs

are not entitled to summary judgment as to the retaliation claims

brought by these two plaintiffs.

Moving to the next element, plaintiffs argue that defendant's

breach of the rental contract constituted an adverse action within

the meaning of <u>McDonnell Douglas</u>.[9]  An adverse action is one that

is "materially adverse," in that it "well might have dissuaded a

reasonable [individual] from making or supporting a charge of

discrimination."  <u>Burlington Northern & Santa Fe Railway Co. v.</u>

<u>White</u>, 548 U.S. 53, 68 (2006) (Title VII retaliation) (internal

quotations omitted); <u>see also</u> <u>Pardi v. Kaiser Permanente Hosp.,</u>

<u>Inc.</u>, 389 F.3d 840, 850 (9th Cir. 2004) (deterrence is the measure

of adverse action in ADA retaliation claims).  The breach of the

contract could have such a deterrent effect.

Finally, the temporal proximity between the protected activity

and the adverse action provides a prima facie case of a causal link

---

[9]  <u>McDonnell Douglas</u>, and most cases applying its burden-shifting framework, considered claims of retaliation in an employment context.  Accordingly, these cases require an "adverse employment action," a term of art.  Because the ADA explicitly allows retaliation claims outside the employment context, 42 U.S.C. § 12203(a), where plaintiffs have alleged that they were retaliated against for complaining of discrimination prohibited by Title III of the ADA, cases have looked for "adverse actions."  <u>See, e.g.,</u> <u>Mershon v. St. Louis Univ.</u>, 442 F.3d 1069, 1073 (8th Cir. 2006).

between the two. <u>Pardi</u>, 389 F.3d at 850 (citing <u>Bell v. Clackamas County</u>, 341 F.3d 858, 865-66 (9th Cir. 2003)). Here, defendant cancelled the contract approximately 48 hours after receiving plaintiffs' statement of an intent to enforce the rights provided by the ADA. This is close enough to warrant an inference of causation. <u>See</u> <u>Miller v. Fairchild Industries, Inc.</u>, 885 F.2d 498, 505 (9th Cir. 1989) (fact that adverse action occurred less than 42 days after protected activity satisfied plaintiff's burden to show prima facie case of causation), <u>Yartzoff v. Thomas</u>, 809 F.2d 1371, 1376 (9th Cir. 1987) (when adverse actions taken between two weeks and three months after protected activity, proximity provided prima facie case of causation); <u>see also</u> <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1065 (9th Cir. 2002) (discussing <u>Miller</u> and <u>Yartzoff</u>).

Because plaintiffs Jason and Anna Davison have established a prima facie case of retaliation, the burden shifts to defendant to offer a non-retaliatory explanation for the adverse action. <u>Pardi</u>, 389 F.3d at 850 (quoting <u>Winarto v. Toshiba Am. Elecs. Components, Inc.</u>, 274 F.3d 1276, 1284 (9th Cir. 2001)). Here, defendant argues that the cancellation was due to concerns over building safety and liability for unsafe conditions as revealed by the Chico Fire Department's inspection, and the cost that would be required to remedy these conditions. The proffer of this explanation satisfies defendant's burden. <u>See, e.g.</u>, <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 919 (9th Cir. 1996) (where defendant had merely articulated a non-retaliatory motive, holding that this was

1    sufficient to shift the burden back to plaintiff).

2      Plaintiffs therefore bear the burden of showing that
3 defendant's non-retaliatory explanation is pretextual, such that
4 the cancellation of the contract was in fact motivated by
5 plaintiffs' assertion of rights under the ADA. Pardi, 389 F.3d at
6 850. Plaintiffs have provided circumstantial evidence that would
7 enable a jury to conclude that defendant's proferred motive was
8 pretextual. Winarto, 274 F.3d at 1284 (quoting Godwin v. Hunt
9 Wesson Inc., 150 F.3d 1217, 1222 (9th Cir. 1998)). On plaintiffs'
10 own motion, however, the court must consider whether there is
11 contradictory evidence offered by the defendant. Defendant has
12 provided evidence, in the form of Parker's declaration, that
13 supports defendant's proferred non-discriminatory motive. On the
14 present motion, the court cannot evaluate the credibility of this
15 evidence.[10]

16      Accordingly, there remains an issue of material fact as to
17 defendant's motive in cancelling the contract. Plaintiffs' request
18 for summary judgment must also be denied as to the ADA retaliation
19 claims of Jason and Anna Davison.

20 **D. Statutory Damages**

21      As explained above, the court concludes that plaintiffs are
22 entitled to summary judgment as to liability on Unruh claims

23 _____

24      [10] In this regard, the court distinguishes between Parker's
testimony regarding motive, which is the only evidence on this
25 issue, from Parker's testimony regarding the content of various
communications, in which Parker purported to interpret the content
26 of communications when undisputedly adequate copies of the same had
been provided.

premised on discrimination in violation of the ADA, but not on plaintiffs' retaliation claims. The court therefore addresses plaintiffs' request for statutory damages on these claims.

Cal. Civ. Code § 52(a) provides for statutory minimum damages of $4,000 per violation of the Unruh Act. In contrast to the availability of monetary damages under state law, the ADA provides for only injunctive relief. 42 U.S.C. § 12188(a)(1), Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002).

There is currently a split of authority as to whether statutory damages are available for Unruh Act claims premised on ADA violations when no intentional discrimination is shown. In 1991, the California Supreme Court interpreted section 52(a) as providing for damages only in cases of intentional discrimination. Harris v. Capital Growth Investors XIV, 52 Cal. 3d 1142, 1172 (1991). A year later, section 51 was amended to provide that "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section." See Gunther v. Lin, 144 Cal. App. 4th 223, 227 (2006). In 2004, the Ninth Circuit held that this amendment made statutory damages available under Cal. Civ. Code § 52 whenever a violation of the ADA was shown, regardless of whether intentional discrimination was shown. Lentini v. Calif. Ctr. for the Arts. 370 F.3d 837, 847 (9th Cir. 2004). In 2006, however, a California Court of Appeal declined to follow Lentini, instead holding that even when an Unruh Act claim was premised on an ADA violation, statutory damages were available only when intentional

26

discrimination was shown.  *Gunther*, 144 Cal. App. 4th at 234.
*Gunther* based this conclusion on the holding that Cal. Civ. Code
section 52 is technically separate from the Unruh Act, which is
codified solely in section 51.  *Id*. at 227.  The California Supreme
Court denied a petition to review *Gunther* on January 17, 2007.

This court summarized this conflict in an order issued on
March 22, 2007.  *Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d
1127 (E.D. Cal. 2007).  In *Wilson*, I noted that "[w]here the
highest court of a state has not pronounced upon an issue of state
law, as is the case here, a federal court sitting in diversity must
use its own best judgment to predict how that court would decide
the issue."  *Id*. 1135 (citing *Takahashi v. Loomis Armored Car
Serv.*, 625 F.2d 314, 316 (9th Cir. 1980)).  This analysis must be
take into account "all available data."  *Id*. (quoting *Estrella v.
Brandt*, 682 F.2d 814, 817 (9th Cir. 1982)).  A decision of an
intermediate appellate court is not controlling, but it is
nonetheless "'not to be disregarded by a federal court unless [the
federal court] is convinced by other persuasive data that the
highest court of the state would decide otherwise.'"  *Id*. (quoting
*Estrella*, 682 F.2d at 817).  I then concluded that there was
"convincing evidence" that the California Supreme Court would be
unlikely to follow *Gunther*, such that *Gunther* was "not likely the
law of the state of California."  *Id*. at 1136.  *Harris* and other
California opinions had concluded, contrary to *Gunther*, that Cal.
Civ. Code § 52 was part of the Unruh Act, *id*. at 1137, and
*Gunther* was contrary to the plain meaning of the statute, the

27

purpose evinced by its legislative history, and various canons of construction. Id. at 1137-41. Accordingly, I held that "a plaintiff may obtain damages under the Unruh Act for violations of the ADA even without a showing of intentional discrimination." Id. at 1141.[11]

My opinion in Wilson was not the last word on this issue. Most significantly, the Ninth Circuit subsequently addressed this issue, and similarly expressed "doubt about whether the California Supreme Court would follow Gunther." Munson v. Del Taco, Inc., 522 F.3d 997, 1002 (9th Cir. 2008) (discussing Wilson, 479 F. Supp. 2d at 1137). The Ninth Circuit noted that four other district court opinions had joined in Wilson's conclusion. Id. (citing cases). Rather than decide whether Gunther stated California law, the panel certified the question to the California Supreme Court. Id. at 1003. That Court granted the request for certification, but has not yet decided the issue. Munson v. Del Taco, Inc., No. S162818, 2008 Cal. LEXIS 7876 (Cal. June 25, 2008) (order granting certification).

In light of the pending resolution of this issue by the California Supreme Court, a stay of this matter is appropriate. See Feezor v. Big 5 Corp., 2008 U.S. Dist. LEXIS 76448 (E.D. Cal. Sept. 29, 2008) (Damrell, J.) ("the important policies of comity and federalism implicated by § 1367(c) will be served by staying"

---

[11] Because Wilson concluded that Gunther did not state the law of California, Wilson did not decide whether this court was otherwise bound by Lentini. Wilson, 470 F. Supp. 2d at 1136.

resolution of the same question pending the California Supreme Court's decision in _Munson_); _see also_ _Wilson_, 479 F. Supp. 2d at 1129 (explaining that the court had previously stayed the matter pending a decision by the California Supreme Court as to whether to review _Gunther_).  However, the court need only enter a partial stay as to further adjudication of this question, namely, the availability of statutory damages on plaintiffs' Unruh Act claims; litigation of other aspects of this case may proceed.

The court also reminds counsel of their ethical duty to not knowingly fail to disclose legal authority in the controlling jurisdiction directly adverse to the position of their clients. _See_ Local Rule 83-180(e) (requiring counsel to comply with the American Bar Association's Model Rules of Professional Conduct where applicable); ABA Model Rules of Prof'l Conduct R. 3.3(b) & Comment 4 ("A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities.").  In this case, plaintiffs' discussion of this issue relied upon _Wilson_, citing _Lentini_ and _Harris_ in passing but making no mention of _Gunther_.  Nor did plaintiffs' counsel refer to the Ninth Circuit's discussion and certification of this question in _Munson_, or the California Supreme Court's grant of certification on this issue.  However, these issues were apparently known to plaintiffs' counsel Scottlynn J Hubbard IV, who is listed as counsel for plaintiff-respondent-appellee in that party's answer brief on the merits before the California Supreme Court in _Munson_. _Munson v. Del Taco_, 2008 CA S. Ct. Briefs 62818 (Cal. Sept. 26,

2008).

## IV. CONCLUSION

For the reasons stated above:

1.  Discovery is RE-OPENED for the limited purpose of allowing plaintiffs to depose Rebecca Parker. Defendant SHALL pay the cost of this deposition, including reasonable costs and attorney's fees incurred by plaintiffs, pursuant to Fed. R. Civ. P. 37(c). Plaintiffs SHALL file an affidavit with the court describing such expenses.

2.  Plaintiffs' motion for summary judgment is GRANTED as to liability on plaintiff Rochelle Davison and Gloria Leyden's Unruh claims premised on violations of Title III of the ADA.

3.  Plaintiffs' motion for summary judgment is DENIED as to all plaintiffs' Unruh claims premised on retaliation in violation of Title V of the ADA.

4.  The court STAYS resolution of the question of statutory damages pending the California Supreme Court's decision in response to <u>Munson v. Del Taco</u>, 522 F.3d 997 (9th Cir. 2008). This partial stay shall not limit the parties' ability to proceed with other aspects of this case.

IT IS SO ORDERED.

DATED: May 26, 2009.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT